UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Jeffery L. Young,**<br><br>Petitioner,<br><br>v.<br><br>**Jessica Symmes,**<br><br>Respondent. | Civil No. 06-4246 (JRT/JJG)<br><br>**REPORT<br>AND<br>RECOMMENDATION** |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter comes before the undersigned on petitioner Jeffery Young's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1).  Mr. Young, who is imprisoned at the Minnesota state prison at Oak Park Heights, is proceeding on his own behalf.  Respondent Jessica Symmes, who appears in her official capacity as warden of that prison (the Warden), is represented by Robert D. Goodell, Assistant Anoka County Attorney.  This matter is referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(a).

**I.    BACKGROUND**

After being convicted in a Minnesota district court for murder, assault, and kidnapping, Mr. Young (Young) was sentenced to imprisonment.  The convictions arise out of events that occurred at the apartment of Precious Franklin on the morning of November 3, 2002. Franklin lived there with her son and a companion, Curtis Anthony.

According to Franklin, she woke up around 4 a.m. after noticing her kitchen lights were on.  When she went to the kitchen to investigate, two men confronted her.  One was armed with a

gun, the other with a knife. She fled to her bedroom, where Anthony was sleeping. The men followed and, pointing with their weapons, placed Franklin and her son into the bathroom.

After some discussion between the men and Anthony, Franklin heard a gunshot, and the men ran from the apartment. Franklin went back to the bedroom and found Anthony had been shot. Franklin claimed, after he told her to call the police, Anthony then said "Jeff and Lenair" or that "it's Jeff and Lennell." By the time police arrived, Anthony was uncommunicative and he died shortly thereafter.

During police investigation later that day, Franklin consistently stated that the suspects' names were Jeff and "Lenny" or "Lennell," explaining that the men were cousins of Anthony's ex-girlfriend. From this information, police determined that Jeffery Young and Lennell Martin were suspects.

After obtaining a picture of Martin, police returned to Franklin later that day and showed her a photographic line-up. Franklin identified Martin as the man with the gun. She pointed to one other man, believing he might be the man with the knife, but police told her that the other suspect was not included in this line-up.

The next day, police asked Franklin to examine another photographic line-up. Franklin believed that the purpose of the line-up was so she could identify the man with the knife. During the procedure, police explained that the suspect may not be in the lineup, and they did nothing to single out a particular picture. Franklin pointed out a picture of Young and identified him as the man with the knife.

Young and Martin were prosecuted in a Minnesota state district court. At the jury trial, Franklin testified about the statements Anthony made to her before the police arrived, and she identified Young and Martin as the assailants.

2

The jury retired for deliberations eleven days after Franklin testified. Around that time, the district court judge informed counsel that if the jury requested transcripts of testimony, "My standard answer is no." Shortly after the jury commenced deliberations, it requested a transcript of Franklin's testimony, which the district court judge denied. The jury subsequently returned a mixed verdict, acquitting Young of premeditated first-degree murder but convicting him of first-degree felony murder, second-degree murder, second-degree assault, and kidnapping.

Young now brings a motion for a writ of habeas corpus, challenging his convictions in three areas. He argues, first, that the state court violated the Confrontation Clause by allowing Franklin to testify about Anthony's statements; second, it violated due process by denying the jury's request for a transcript of Franklin's testimony; and third, it violated due process because Franklin's in-court identification of Young was tainted by improper identification procedures beforehand. The issues raised by these arguments are as follows.

## II.    DISCUSSION

### A.    Standard of Review

The threshold question is the appropriate standard of review. When determining whether a petitioner can obtain a writ under § 2254, a court looks to § 2254(d), which provides in relevant part,[1]

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in a State court proceedings unless the adjudication of the claim—

---

[1] The remainder of this paragraph, § 2254(b)(2), provides for relief where a state court makes a decision "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Though Young raises several arguments that challenge the factual findings by the state district court, these findings are not material to the legal issues in his petition. For this reason, it is not necessary to discuss the factual standard of review under § 2254(b)(2).

3

>   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]

In accordance with this standard, a federal court exercises limited and deferential review of the underlying state court decision. *Greer v. Minnesota*, 493 F.3d 952, 956 (8th Cir. 2007).

A state court decision is contrary to clearly established federal law where the state court reaches a conclusion opposite that of the U.S. Supreme Court on a question of law, or reaches an opposite result on facts that are materially indistinguishable from U.S. Supreme Court precedent. A state court decision is an unreasonable application of clearly established federal law where the state court correctly identifies the controlling law but does not reasonably apply it. *Linehan v. Milczark*, 315 F.3d 920, 924 (8th Cir. 2003).

The standard of review also requires a federal court to decide what is "clearly established federal law." As the ensuing analysis indicates, this question is sometimes important to this case. Clearly established federal law is often described as the governing legal principles, as set out by the U.S. Supreme Court, at the time of the state court's decision. *See Guinn v. Kenma*, 489 F.3d 351, 353 (8th Cir. 2007).

In *Williams v. Taylor*, the U.S. Supreme Court attempted to clarify the standard. Writing for a plurality, Justice Sandra Day O'Connor stated that clearly established federal law refers to "the holdings, as opposed to the dicta, of this Court's decisions." 529 U.S. 362, 412 (2000). The Eighth Circuit, in ensuing decisions, often recited this language. *See, e.g., Poole v. Goodno*, 335 F.3d 705, 707 (8th Cir. 2003).

The precise meaning of this language, however, was a serious point of contention when the U.S. Supreme Court revisited it in *Carey v. Musladin*. 127 S.Ct. 649 (2006). The majority opinion took a relatively narrow view of clearly established federal law, holding that if the Court

had no prior holdings on point, there is no standard and thus no clearly established federal law. *Id.* at 654.

But two Justices, who only concurred in the judgment, criticized the result. Justice Souter proposed that, if a general underlying principle is clear, it is possible to determine whether a state court decision is contrary or unreasonable. *Id.* at 657-58. Justice Stevens suggested that even though a particular holding is unclear, the underlying standard may not be, and so the standard still provides clearly established federal law. *Id.* at 655.

For some of the areas of the law at issue in this matter, there are instances where the U.S. Supreme Court has provided some guiding principles, but not necessarily a holding that dictates a result. But when there is sufficient guidance to determine whether the state court decision is contrary or unreasonable, this Court will do so. *See id.* at 657-58 (Souter, J., concurring in the judgment).

### B.     Anthony's Statements

Regarding Anthony's statements to Franklin, Young principally asserts that these out-of-court statements are testimonial hearsay to which the Confrontation Clause attaches. As there was no opportunity to cross-examine Anthony at trial, Young argues, the state court violated the Confrontation Clause by admitting Anthony's statements into evidence. The Warden responds that Anthony's statements are not testimonial, and so the Confrontation Clause does not attach and it was not violated.

As Young correctly observes, the U.S. Supreme Court recently explored the meaning of the Confrontation Clause in *Crawford v. Washington*. 541 U.S. 36 (2004). This case involved circumstances where, after a crime, police interviewed the wife of the suspected perpetrator and she described the crime. In the ensuing prosecution, the wife's statement was received at trial,

5

but she did not testify and was not available for cross-examination. The issue before the Court was whether admission of this statement violated the Confrontation Clause. *Id.* at 38-40.

The Court began by examining the text from the Sixth Amendment, which provides, "In all criminal prosecutions, . . . the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Court defined "witnesses" as those who "bear testimony." It then held that when a person makes out-of-court "testimonial statements," the Confrontation Clause attaches. In a criminal prosecution, therefore, such statements are not admissible at trial unless the declarant is then unavailable and the accused has had a prior opportunity to cross-examine the declarant. *Id.* at 51-52, 59.

The Court did not supply a standard for determining whether out-of-court statements are "testimonial statements," expressly deferring its "effort to spell out a comprehensive definition." *Id.* at 68. But it unequivocally held that certain kinds of statements are testimonial, such as those made in a preliminary hearing in criminal proceedings, or those made to police in an ordinary investigative interview. *Id.* at 52. The Court accordingly ruled that the wife's statement was testimonial and that its admission at trial violated the Confrontation Clause.

In strongly worded dicta, the Court also qualified the rule for testimonial statements. If a criminal hearsay exception existed at common law prior to adoption of the Sixth Amendment, the Court indicated, statements are admissible at trial notwithstanding the Confrontation Clause. *Id.* at 53-55 (citing *Mattox v. United* States, 156 U.S. 237, 243 (1895)). The Court noted one criminal hearsay exception—dying declarations—and signaled that this exception may be the only one that might encompass testimonial statements. *Id.* at 55 n. 6.

The U.S. Supreme Court returned to testimonial statements in *Davis v. Washington*. 547 U.S. 813 (2006). Two statements were at issue, both by victims of domestic assault. One was

6

made to a 911 operator shortly after the assault; the other was made to police shortly after they arrived at the scene of the assault. *Id.* at 817-18.

Once again, the Court declined to set out a particular standard for determining whether a statement is testimonial. But it reasoned that, where police questioning is intended to establish or prove events that will be relevant to an upcoming prosecution, a statement is more likely to be testimonial. But a statement is less likely to be testimonial where police undertake questioning in order to meet an ongoing emergency. The Court also suggested that a statement is less likely to be testimonial when the declarant describes events as they are happening. *Id.* at 822, 827.

Consistent with this reasoning, the Court concluded that the victims' statements were not testimonial, and therefore, the Confrontation Clause was not violated. *Id.* at 826-28. But the Court also expressly limited the scope of this ruling, finding it "unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" *Id.* at 823 n. 2. And the Court also signaled another open issue, that the analysis of whether a statement is testimonial may not depend on whether a person is being questioned. *See id.* at 823 n. 1.

As *Crawford* and *Davis* indicate, the applicability of the Confrontation Clause depends on whether a statement is testimonial. *See United States v. Johnson*, 495 F.3d 951, 976 (8th Cir. 2007); *United States v. Torres-Villalobos*, 487 F.3d 607, 612 (8th Cir. 2007). There is no clearly established federal law, however, that controls whether Anthony's statements are testimonial.

Assuming that Anthony's statements are dying declarations, *Crawford* acknowledges an open question on whether dying declarations are testimonial statements. But even if Anthony's statements are not dying declarations, the *Davis* decision acknowledges an open question about

7

whether *any* private statements, to those other than law enforcement personnel, are testimonial. Given these open questions, there is no Supreme Court precedent that affords Young relief here.

Without directly controlling precedent, however, it is possible to suggest a preliminary analysis for Anthony's statements. At the time he made his statements, Anthony was not being questioned by Franklin or law enforcement, and he was describing events immediately after they happened.

Under the circumstances, it does not appear Anthony's statements were formally intended as proof for future prosecution, and so they are not testimonial. *Cf. United States v. Clemmons*, 461 F.3d 1057, 1060-61 (8th Cir. 2006) (holding that where officers questioned a victim at the scene of a shooting, the victim's statements were taken for the purpose of rendering aid and locating danger, and were not testimonial). His statements to Franklin were more like a private conversation, which is generally deemed nontestimonial. *See United States v. Reyes*, 362 F.3d 536, 540-41 & n. 4 (8th Cir. 2004). Based on this analysis, it is possible to conclude that the Confrontation Clause did not bar the statements from being admitted as evidence at Young's trial.

To support his contention that Anthony's statements are testimonial, Young cites cases involving statements by informants to law enforcement. The emerging rule appears to be that, if an informant is aware that he or she is making a statement to law enforcement personnel, then the statement is testimonial. *United States v. Cromer*, 389 F.3d 662, 674 (6th Cir. 2004). But if the informant is unaware—for instance, where the statement is made to an undercover officer— the statement is not testimonial. *United States v. Saget*, 377 F.3d 223, 229-30 (2d Cir. 2004). Because these cases examine communications with law enforcement personnel, and not private statements like those between Anthony and Franklin, these cases are not persuasive here.

8

Young also raises arguments that directly challenge the state court's decision, under the applicable law of evidence, to admit Anthony's statements at trial. As the discussion beforehand shows, these concerns are not material to the preceding analysis under the Confrontation Clause. In the interest of complete analysis, however, this Court thinks it prudent to give some additional scrutiny to these concerns.

When a prisoner advances a petition under § 2254, a federal court cannot reconsider the decisions of a state court on questions of state law. Because state law controls the admissibility of evidence at trial, a federal court cannot examine evidentiary errors the state court may have committed at trial. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The sole question, instead, is whether the admission of that evidence violates federal law. *See* 28 U.S.C. § 2254(a).

If a prisoner does not specify how an evidentiary error violates federal law, the sole issue is whether the admission of the evidence comports with federal guarantees of due process under the Fourteenth Amendment. *See Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005). Under this due process analysis, a court considers whether the contested evidence is so prejudicial that it renders the entire trial fundamentally unfair. *Garcia v. Mathes*, 474 F.3d 1014, 1017 (8th Cir. 2007).

The state court admitted Anthony's statements at trial under the hearsay exceptions for dying declarations, or alternatively, for excited utterances. Young argues that neither exception applies and that Anthony's statements are inadmissible hearsay. There does not appear to be any clearly established federal law indicating that admission of such evidence violates due process. For this reason, Young cannot obtain relief for his evidentiary objections.

Assuming that it is necessary to address these objections on their merits, Young chiefly devotes discussion to whether Anthony was actually dying at the time he made his statements to

9

Franklin. But it is not essential to address this issue, as there is ample support for the conclusion that Anthony's statements were excited utterances.

In the moments following a crime, a crime victim is ordinarily under stress of excitement caused by the crime. Because such stress causes the statements of the victim to be spontaneous, rather than the product of reflection, the statements are reliable enough to be admissible hearsay. *United States v. Bercier*, 506 F.3d 625, 630 (8th Cir. 2007); *United States v. Wilcox*, 487 F.3d 1163, 1170-71 (8th Cir. 2007).

The record shows that Anthony made statements moments after he was shot, and such circumstances plainly establish the sort of stress for an excited utterance. Anthony's statements are sufficiently reliable that their admission did not render the trial fundamentally unfair, and therefore, due process was not violated.

### C.     Jury Request for Transcript

Young next argues that due process was violated when the state court refused the jury's request for a transcript of Franklin's testimony. The Warden counters that, because this decision is committed to the discretion of the court, no violation could have occurred. Young replies that, because the judge indicated he would categorically deny all such requests, there was no proper exercise of discretion and due process was nevertheless violated.

As other courts observe, there is no case law from the U.S. Supreme Court that discusses these matters. *Friday v. Straub*, 175 F.Supp.2d 933, 939 (E.D.Mich. 2001); *cf. Cottrel v. New York*, 259 F.Supp.2d 300, 305 (S.D.N.Y. 2003) (summarily concluding that state court's refusal to read a transcript was not an "error of constitutional dimension"). Without such case law, there is no clearly established federal law that would indicate a violation of due process, and so Young cannot obtain relief here.

Notwithstanding this result, it is possible to comment briefly on the merits. Two federal appellate courts, including the Eighth Circuit, have examined due process in this context. These cases suggest that, unless the prisoner shows prejudice from the denial of the jury's request for a transcript, there is no violation of due process. *See Daniels v. Wood*, 819 F.2d 195, 197 (8th Cir. 1987); *United States v. Birges*, 723 F.2d 666, 671 (9th Cir. 1984).

Young asserts that, because Franklin testified eleven days before jury deliberations, the jurors' recollection was impaired and they required a transcript in order to deliver a fair verdict. But this Court is not persuaded that the delay, by itself, is enough to show prejudice to Young. Assuming that the circuit courts' rule is an accurate reflection of clearly established federal law, there is insufficient prejudice to establish a violation of due process here.

To support his position, Young cites cases in which federal convictions were reversed because a federal judge categorically denied the jury's request for a transcript. In these cases, the appellate courts recognized that a district court has discretion whether to supply a transcript. But such discretion is abused, and a new trial may be required, where the district court categorically denies the request without considering how it affects the case. *See United States v. Criollo*, 962 F.2d 241, 244 (2d Cir. 1992); *United States v. Zarintash*, 736 F.2d 66, 70 (3d Cir. 1984); *United States v. White*, 23 F.3d 404, 1994 WL 177280 at *2 (4th Cir. 1994) (mem.).

Federal authority in this area is not well developed. Two published cases suggest it is reversible error for a federal court to categorically deny a transcript. *Criollo*, 962 F.2d at 244; *Zarintash*, 736 F.2d at 70. One unpublished case suggests that, without a showing of prejudice, the error is harmless. *White*, 1994 WL 177280 at *2. But neither the Eighth Circuit, nor the U.S. Supreme Court, has examined this question.

There are several reasons that these authorities are not persuasive here. One is that, of the courts to reach the question, their rulings are on questions of federal criminal law. These courts have yet to say whether this principle implicates constitutional guarantees of federal due process, such that the rule may be applied to state court proceedings. And it bears repeating that, without guidance from the U.S. Supreme Court, there is no clearly established federal law here. So even if the state court contradicted a federal rule, this rule is not so clearly established as to provide relief under § 2254.

### D.     Identification Procedures

Young's remaining argument is that the state court violated due process, when it allowed Franklin to identify Young at trial, because the identification was tainted beforehand by improper identification procedures.

If officers use impermissibly suggestive identification procedures that cause a substantial likelihood of misidentification by the witness, it is a violation of due process for the witness to testify about identity at trial. *Armstrong v. Gammon*, 195 F.3d 441, 445 (8th Cir. 1999).

A two-step test is used to determine whether due process is violated. The initial question is whether the identification procedure was by itself impermissibly suggestive. If so, the inquiry then shifts to whether, under the totality of the circumstances, the procedure caused a substantial likelihood of misidentification. *United States v. Triplett*, 104 F.3d 1074, 1079 (8th Cir. 1997). So where the record shows that the identification procedure was not impermissibly suggestive, it is not necessary to consider whether the witness' identification at trial was reliable. *See United States v. Boston*, 494 F.3d 660, 666 (8th Cir. 2007); *Triplett*, 104 F.3d at 1080.

Franklin was shown two photographic line-ups, one on the day of the incident, and the other the following day. The current record lacks a copy of either one, though it may be inferred

that police employed a one-page, six-person photographic array.  The composition of the line-up, however, is not material here.  Young instead focuses on how police behaved during the line-ups, arguing that through their conduct, police improperly singled him out.

Once again, there is no U.S. Supreme Court precedent that is directly controlling, and so there is arguably no clearly established federal law in this area.  Unlike the preceding arguments, however, Eighth Circuit decisions provide an informed and well-grounded basis for the analysis here.  *See Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir. 1999) (holding that for habeas petitions under § 2254, a court may appropriately consider decisions from lower federal courts).

At the first line-up on the day of the incident, Franklin pointed out a second man and told police he was the man with the knife.  The police responded that the man with the knife was not included in that line-up.  Nothing about this incident, however, demonstrates that officers singled out Young.  The first line-up, therefore, was not impermissibly suggestive.  *See Schawitsch v. Burt*, 491 F.3d 798, 802-03 (8th Cir. 2007) (determining that where officers did nothing to isolate the suspect's photograph, and made no further comments until the witness selected the photograph, the procedure was not impermissibly suggestive).

To the extent Franklin mistakenly identified another man, that issue does not go to the suggestiveness of the procedure, but to the credibility of her testimony at trial.  This credibility question is properly committed to the jury and does not implicate due process.  *See Mack v. Caspari*, 92 F.3d 637, 643 (8th Cir. 1996); *United States v. Eggleton*, 799 F.2d 378, 384 (8th Cir. 1986).

Regarding the second line-up, Franklin later stated that the purpose of the line-up was to identify the man with the knife.  Prior to viewing the line-up, police told her that the suspect may not be in the line-up.  They only showed her one line-up, without doing anything further to single

13

anyone out, and Franklin pointed out Young's photograph.  Police did not show anything else, nor did they prepare a "blind" line-up without Young's photograph in it.

No improper suggestiveness arises from the fact that a witness believes or assumes that the suspect is in the line-up.  *Eggleton*, 799 F.2d at 382-83.  As the Eighth Circuit has noted, "It is only natural that victims of a crime asked to view a lineup would suspect that it contains the criminal."  *Bivens v. Wyrick*, 640 F.2d 179, 180 (8th Cir. 1981) (favorably quoting *State v. Bivens*, 558 S.W.2d 296, 299 (Mo. Ct. App. 1977)).  Nor can suggestiveness be inferred from the fact that police did not prepare a blind line-up.  *United States v. Staples*, 410 F.3d 484, 487 (8th Cir. 2005).

Because the identification procedures here are not impermissibly suggestive, due process was not violated when the state court allowed Franklin to identify Young at trial.  This outcome also means that it is unnecessary to examine the reliability of Franklin's identification testimony.  Young cannot obtain relief, therefore, on his challenges to the identification procedures.

### III.   CONCLUSION

No clearly established federal law controls whether, when a declarant makes a statement to someone other than law enforcement personnel, the statement is testimonial hearsay subject to the Confrontation Clause.  So when the state court allowed Franklin to testify about Anthony's statements at trial, this decision did not contradict clearly established federal law.

Assuming the state court categorically denied the jury's request for a transcript of witness testimony, no clearly established federal law indicates whether this decision violates due process, and so this decision also does not contradict clearly established federal law.

Though Young asserts several challenges to police conduct when Franklin selected him out of a photographic line-up, there is no indication police conduct was impermissibly suggestive

or that Young was singled out. These identification procedures do not violate due process, and therefore, the state court did not contradict clearly established federal law by allowing Franklin to identify Young at trial.

Young has not demonstrated that the state court made a decision that was contrary to, or involved unreasonable application of, clearly established federal law. This Court concludes that his petition for a writ of habeas corpus, under § 2254, is appropriately denied.

## IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Young's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED.**

2. This litigation be dismissed in its entirety and judgment entered.

Dated this 8th day of April, 2008.

s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **April 23, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.