# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JEFFERY L. YOUNG,<br><br>Petitioner,<br><br>v.<br><br>JESSICA SYMMES,<br><br>Respondent. | Civil No. 06-4246 (JRT/JJG)<br><br><br>**ORDER ADOPTING REPORT<br>AND RECOMMENDATION** |

Jeffery L. Young, # 213390, Minnesota Correctional Facility, 5329 Osgood Avenue North, Stillwater, MN 55082, petitioner *pro se*.

Robert D. Goodell, Assistant Anoka County Attorney, **ANOKA COUNTY ATTORNEY'S OFFICE**, 2100 Third Avenue North, Anoka, MN 55303-2265, for respondent.

Petitioner Jeffery L. Young, a prisoner incarcerated at the Minnesota Correctional Facility in Stillwater, Minnesota, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In a Report and Recommendation dated April 4, 2008, United States Magistrate Judge Jeanne J. Graham recommended that Young's petition be denied. Petitioner filed objections to the Report and Recommendation, which the Court has reviewed *de novo* pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b).  For the reasons stated below, the Court overrules petitioner's objections and adopts the Magistrate Judge's Report and Recommendation.

**BACKGROUND**

In the early morning of November 3, 2002, Precious Franklin awoke to find two men in her apartment. One of the men was armed with a knife, and the other man had a gun. Franklin fled from the intruders and hid in her bathroom. She then heard a gunshot. Franklin returned to her bedroom to find that her companion, Curtis Anthony, had been shot, and the suspects had fled. Anthony's wounds were fatal and as he lay dying on the floor, he told Franklin to call the police, and then said "Jeff and Lenair," or "it's Jeff and Lenell."

During the ensuing police investigation, Franklin identified Lenell Martin in a photographic line-up as the suspect with the gun. Franklin then pointed to another man in the same line-up, apparently believing that he was the suspect with the knife. Police told Franklin that the other suspect was not included in that particular line-up. The following day, the police asked Franklin to examine a second photographic line-up. The police explained that the suspect may not be included in the line-up, and they did not single out any particular photograph. Franklin believed that the purpose of the line-up was to identify the man she had seen in her apartment with the knife. She chose a picture of Young and identified him as the man with the knife.

At Young's subsequent trial in Minnesota state court, Franklin testified as to the statements made by Anthony as he lay dying in the bedroom. The prosecution also presented evidence at Young's trial related to Franklin's identification of Young in the second photographic line-up. Eleven days after Franklin's testimony, the jury retired for deliberations. The district court judge informed counsel that if the jury requested

transcripts of testimony, "my standard answer is no." Shortly after the jury began deliberating, it requested a transcript of Franklin's testimony. The district court judge denied the request. The jury ultimately convicted Young of first-degree felony murder, second-degree murder, second-degree assault, and kidnapping.

Young appealed his conviction to the Minnesota Court of Appeals and the Minnesota Supreme Court, both of which affirmed the conviction. Young then filed this petition for a writ of habeas corpus.

## ANALYSIS

An application for a writ of habeas corpus shall be granted when the state proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). In assessing a petition under § 2254, the threshold question is whether there is clearly established federal law. *See Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Poole v. Goodno*, 335 F.3d 705, 707 (8th Cir. 2003). If there is no clearly established federal law, a "habeas court need not assess whether a state court's decision was contrary to or involved an unreasonable application of such law." *See, e.g.*, *House v. Hatch*, 527 F.3d 1010, 1017 (10th Cir. 2008) (internal quotations omitted).

The Supreme Court has stated that clearly established federal law "refers to the holdings, as opposed to the dicta, of this Court's decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see Poole*, 335 F.3d at 707. Where Supreme Court decisions "provide no categorical answer" to the issue at hand and do not "squarely address[] the issue" presented, federal law is not clearly established for purposes of a § 2254 petition. *See*

*Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008); *Hill v. Wilson*, 519 F.3d 366, 368 (7th Cir. 2008) (stating that "a right becomes 'clearly established' only when a course of decisions has established how the Constitution's grand generalities apply to a class of situations"). Thus, principles of constitutional law grounded solely in the holdings of courts of appeals or in Supreme Court dicta cannot supply a basis for § 2254 habeas relief. *Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007) (citing *Musladin*, 127 S. Ct. at 653-54).

### I.   CONFRONTATION CLAUSE

The Magistrate Judge determined that the Supreme Court has not held that the admission of a dying declaration at trial violates the Sixth Amendment's Confrontation Clause. Young now objects to that determination, citing two Supreme Court cases, *Davis v. Washington*, 547 U.S. 813 (2006), and *Crawford v. Washington*, 541 U.S. 36 (2004), to argue that the admission of Anthony's statements at trial violated clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court in *Crawford* addressed the admissibility under the Confrontation Clause of a tape-recorded statement given to police by the defendant's wife describing the defendant's alleged criminal conduct. The Court ultimately found the tape recording inadmissible, holding that testimonial, out-of-court statements offered against the accused may be admitted only where the declarant is unavailable and the accused had had a prior opportunity to cross examine the declarant.

541 U.S. at 51, 53-54.  *Crawford* declined to "spell out a comprehensive definition of 'testimonial,'" but found that statements made in preliminary criminal hearings or to police in investigative interviews – such as the tape-recorded statement at issue – are testimonial in nature.  *Id.* at 52, 68.  The Court also noted that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial."  *Id.* at 56.  The Court suggested in dicta that the Sixth Amendment likely would not preclude the admission of dying declarations, even those that are clearly testimonial in nature, because the exception for dying declarations existed at common law prior to the adoption of the Sixth Amendment.  *Id.* at 56 n.6.

The Supreme Court revisited the issue of testimonial statements in *Davis*, 547 U.S. at 817, addressing whether the admission of statements made by a victim of a domestic assault in a 911 call violated the Confrontation Clause.  The Court again declined to establish a general standard or definition for determining whether an out-of-court statement is testimonial.  *See id.* at 822.  However, the Court determined that a statement is more likely to be testimonial when there is no ongoing emergency and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  *Id.*  A statement is less likely to be testimonial when the declarant is describing events as they are happening.  *Id.*  The Court ultimately concluded that the victim's statement in a 911 call was not testimonial because it described events as they were happening in an ongoing emergency, and its primary purpose was to enable police to meet that emergency.  *Id.* at 827-28.  However, the Court expressly limited the scope of its decision, stating "our holding today makes it unnecessary to consider whether

and when statements made to someone other than law enforcement personnel are 'testimonial.'" *Id.* at 823 n.2, 826-28.

As both *Crawford* and *Davis* make clear, and as the Magistrate Judge correctly stated, the admissibility of statements under the Confrontation Clause depends largely on whether the statements at issue are testimonial. However, *Crawford* explicitly declined to reach the question of whether a dying declaration – even one deemed testimonial in nature – would be admissible as an exception at common law prior to the adoption of the Sixth Amendment. 541 U.S. at 56 n.6. The *Davis* Court similarly declined to reach the question of whether private statements made to someone other than law enforcement are testimonial. 547 U.S. at 823 n.2. As such, the Court agrees with the Magistrate Judge and finds that the Supreme Court has provided no categorical answer to the question of whether the admission of a dying declaration, or of a private statement made to non-law enforcement in the circumstances presented here, violates the Confrontation Clause.[1] Accordingly, the Court concludes that the admission of Anthony's statement at trial was not contrary to clearly established federal law for purposes of Young's § 2254 petition.

## II.    JURY REQUEST FOR A TRANSCRIPT

Young next objects to the Magistrate Judge's determination that the state court's refusal to provide the jury with a transcript of Franklin's testimony did not violate clearly

---

[1] If anything, the Supreme Court has strongly hinted that dying declarations are admissible as an exception to the right of confrontation that existed prior to the adoption of the Sixth Amendment. *See Crawford*, 541 U.S. at 56 n.6 ("Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are."); *see also Giles v. California*, 128 S. Ct. 2678, slip op. at 4-5 (2008) (noting that the admission of dying declarations was a founding-era exception to the right of confrontation).

established federal law. According to Young, the state court's refusal to provide the jury with a transcript violated his due process rights. However, Young has cited no Supreme Court decisions establishing that a defendant's due process rights are violated when the trial court refuses to provide the jury with a transcript of trial testimony during its deliberations. Nor has this Court identified any decisions of the Supreme Court establishing such a right or a categorical answer to the issue presented here. *See, e.g.*, *Friday v. Straub*, 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001) (finding no clearly established federal law with respect to the question whether defendant had a due process right to have a jury receive a transcript of trial testimony); *Thomas v. Waddington*, No. C07-5059, 2007 WL 2712998, at *1-2 (W.D. Wash. Sept. 17, 2007) (same); *cf. Cottrel v. New York*, 259 F. Supp. 2d 300, 305 (S.D.N.Y. 2003) (concluding that a state court's refusal to read a transcript was not "error of a constitutional dimension"). As such, the Court finds that Young has not shown that the state court's decision denying the jury's transcript request was contrary to clearly established federal law.

### III.   PHOTOGRAPHIC IDENTIFICATION

Finally, Young objects to the Magistrate Judge's finding that the photographic line-up used to identify Young did not violate clearly established federal law. Young argues that the police acted in an impermissibly suggestive manner that influenced Franklin's identification during the photographic line-up, and that Franklin's identification of Young during trial violated his due process rights.

The Supreme Court has established a two-part test to determine whether the use of a photographic line-up violates a defendant's due process rights under the Fourteenth

Amendment. *See Manson v. Brathwaite*, 432 U.S. 98, 107 (1977); *Schawitsch v. Burt*, 491 F.3d 798, 802 (8th Cir. 2007) (noting that the two-part test under *Manson* is clearly established federal law for purposes of a § 2254 petition).  The first step is to determine whether the array of photographs was impermissibly suggestive.  *Manson*, 432 U.S. at 107.  "If so, the second inquiry is whether, under all the circumstances, th[e] suggestive procedure gave rise to a substantial likelihood of irreparable misidentification."  *Id.*  Where the record shows that the identification procedure was not impermissibly suggestive, the Court need not consider whether the identification created a substantial likelihood of irreparable misidentification.  *See United States v. Boston*, 494 F.3d 660, 666 (8th Cir. 2007).

Here, the Court agrees with the reasoning of the Magistrate Judge and finds that neither the first nor the second photographic line-up was impermissibly suggestive.  In the first photographic line-up, shown to Franklin on the day of the incident, Franklin identified Young's co-defendant as the man with the gun, then pointed to a second man and told police that he was the man with the knife.  The officers responded that the man with the knife was not included in that particular line up.  The Court finds that this comment did not single out Young or otherwise suggest that Young was the suspect.  *See Schawitsch*, 491 F.3d at 802-03.  Rather, the statement merely reflected the fact that the purpose of the first photographic line-up was to identify the man with the gun, and not the man with the knife.  The fact that Franklin incorrectly identified the suspect in the first line-up may have undermined her credibility at trial, but it does not demonstrate that

the identification procedures were somehow impermissibly suggestive. *See Mack v. Caspari*, 92 F.3d 637, 643 (8th Cir. 1996).

As to the second photographic line-up, Franklin stated that she was told by police prior to viewing the line-up that the suspect's photograph may or may not be included. The Court finds that such a comment by police does not make the identification procedure impermissibly suggestive. *See United States v. Eggleton*, 799 F.2d 378, 382-84 (8th Cir. 1986) (finding that the fact that a witness reasonably assumes that a suspect will be included within a line-up does not give rise to an impermissibly suggestive identification procedure). Here, as with the first line-up, the record suggests that police did nothing to single out Young or to suggest that Young was the suspect or that Franklin should choose Young from among the individuals in the line-up.

In sum, Young has not pointed to anything in the record showing that the photographic identification procedures in this case were impermissibly suggestive. The Court therefore concludes that Franklin's identification of Young during trial was not contrary to, or an unreasonable application of, clearly established federal law.

**IV.   CERTIFICATE OF APPEALABILITY**

The Court may grant a Certificate of Appealability only where the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the issues must deserve further proceedings. *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994). For purposes of appeal under 28 U.S.C.

§ 2253, the Court finds it unlikely that reasonable jurists would find the issues raised in Young's § 2254 petition debatable, or that some other court would decide this petition differently. The Court therefore declines to grant a Certificate of Appealability in this case.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** petitioner's objections [Docket No. 16] and **ADOPTS** the Report and Recommendation dated April 8, 2008 [Docket No. 15]. **IT IS HEREBY ORDERED** that:

1.  Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] is **DENIED** and this case is **DISMISSED with prejudice**.

2.  For the purpose of appeal, the Court does not grant a Certificate of Appealability under 28 U.S.C. § 2253(c)(2).

The Clerk of Court is respectfully **DIRECTED** to mail a copy of this Order to the petitioner.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: October 28, 2008　　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge